1 | J.T. WELLS BLAXTER, (SBN 190222)
wblaxter@blaxterlaw.com
2 | BRIAN R. BLACKMAN, (SBN 196996)
bblackman@blaxterlaw.com
3 | BLAXTER | BLACKMAN LLP
One Bush Street, Suite 650
4 | San Francisco, California 94104
Telephone: (415) 500-7700
5 | Facsimile: (415) 766-4255

6 | Attorneys for Defendants WHOLE FOODS
MARKET SERVICES, INC., WHOLE
7 | FOODS MARKET CALIFORNIA, INC.
and MRS. GOOCH'S NATURAL
8 | FOOD MARKETS, INC.

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11 | PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC., and
12 | LEAH WILLIAMS, on behalf of herself and
all others similarly situated,
13 |
Plaintiffs,
14 |
v.
15 |
WHOLE FOODS MARKET SERVICES,
16 | INC., a Texas corporation; WHOLE FOODS
MARKET CALIFORNIA, INC., a California
17 | corporation; MRS. GOOCH'S NATURAL
FOOD MARKETS, INC., a California
18 | corporation,
19 |
Defendants.

Case No. 15-cv-4301-NC

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Date: January 20, 2016
Time: 1:00 PM
Crtrm: 7 – 4th Floor

Magistrate Judge Nathanael Cousins

**TABLE OF CONTENTS**

    **Page**

I.    LEGAL ARGUMENT……………………………………………………………...1

    A.    The Meat And Poultry Acts Expressly Preempt Plaintiffs' State Law Claims………………………………………1

        1.    Whole Foods' Signs, Placards and Napkins Bearing the GAP Insignia, Step Ratings and Call-Outs Constitute "Labeling" Under the Acts…………………………..1

        2.    The FSIS Has Approved the Advertising Elements Set Forth In Whole Foods' Point of Purchase Materials…………………………………………….3

        3.    The Additional Statements Set Forth on Some of Whole Foods' Materials Do Not Render Them False or Misleading…………………………………….4

    B.    Conflict Preemption Bars Plaintiffs' Claims……………………………..6

    C.    The SAC Fails to Allege an Affirmative Misrepresentation…………………..7

    D.    Whole Foods Does Not Have a Duty to Disclose GAP's Audit Process or Compare Its Standards to Industry Standards………..………....9

        1.    Materiality Alone Does Not Establish a Duty To Disclose……………………………………………………….9

        2.    Because the Omitted Facts Were Reasonably Discoverable, Whole Foods Does Not Have Exclusive Knowledge…………………………..……………….10

        3.    Whole Foods Did Not Make a Partial Representation………………………………………………………….11

    E.    The SAC Fails To Allege Its Fraud Based Claims With Specificity……………………………………………………...12

    F.    The SAC Fails To Adequately Allege Standing…………………………..14

    G.    Plaintiffs' Class Allegations Should Be Dismissed……………………….14

    H.    Leave To Amend Should Not Be Granted……………………………...15

II.    CONCLUSION……………………………………………………………15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*American Italian Pasta, Co. v. New World Pasta Co.*,
    371 F.3d 387 (8th Cir. 2004)..................................................................................5

*Animal Legal Defense Fund v. Great Bull Run, LLC*,
    No. 14-cv-01171-MEJ, 2014 WL 2568685 (N.D. Cal. 2014).............................14

*Britt v. Grocers Supply*,
    978 F.2d 1441 (5th Cir. 1992)...............................................................................6

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999).................................................................................5

*Falk v. Gen. Motors.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007).........................................................11, 12

*Fraker v. KFC Corp.*,
    No. 06-CV-01284-JM (WMC), 2007 WL 1296571 (S.D. Cal. 2006)..................5

*Haskins v. Symantec Corp.*,
    No. 13-cv-01834 JST, 2013 WL 6234610 (N.D. Cal. 2013)..............................13

*Heron v. Best Buy Co., Inc.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013)...............................................................10

*In re Methyln Teritiary Butyl Ether (MTBE) Prods. Liabl. Litig.*,
    725 F.3d 65 (2d Cir. 2013)....................................................................................7

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014)...............................................................9, 11

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
    285 F.R.D. 573 (E.D. Cal. 2012).........................................................................11

*Kamm v. California City Development Co.*,
    509 F.2d 205 (9th Cir. 1975)...............................................................................15

*Kordel v. United States*,
    335 U.S. 345 (1948)..............................................................................................3

*Meaunrit v. ConAgra Foods, Inc.*,
    No. C09-02220 CRB, 2010 WL 2867393 (N.D. Cal. 2010)....................2, 3, 4, 6

*Nat'l Broiler Council v. Voss*,
    44 F.3d 740, 743 (9th Cir. 1994)...........................................................................1

*New York State Restaurants Ass'n v. New York City Bd. of Health*,
    509 F. Supp. 2d 351 (2007)...................................................................................3

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014)................................................................15

*Sanderson Farms, Inc. v. Tyson Foods, Inc.* ("*Sanderson*"),
    549 F. Supp. 2d 708 (D. Md. 2008).......................................................................6

*Shaker v. Nature's Path Foods, Inc.*,
    No. EDCV 13-1138-GW(OPx), 2013 WL 6729802 (C.D. Cal. 2013).................5

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997)...............................................................................5

*Stanwood v. MaryKay, Inc.*,
  941 F. Supp. 2d 1212 (C.D. Cal. 2012)……………..…………………………………………10

*U.S. Concord, Inc. v. Harris Graphics Corp.*,
  757 F. Supp. 1053 (N.D. Cal. 1991)……………………………………………………….........12

*Wolph v. Acer America Corporation*,
  No. C09-01314 JSW, 2009 WL 2969467 (N.D. Cal. 2009)…………………………………...10

**STATE CASES**

*American Meat Inst. v. Leeman*,
  180 Cal. App. 4th 728 (Ct. App. 2009)……………………………………………......2, 3, 4, 7

*Chern v. Bank of America*,
  15 Cal. 3d 866 (1976)……………………………………………………………………….…..1

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249 (Ct. App. 2011)…....……………………………………………….…..10

*Hill v. Roll Intern. Corp.*,
  195 Cal. App. 4th 1295 (2011)…………………………………………….....……………..….8

*In re Tobacco II Cases*,
  46 Cal.4th 298 (2009)……………………………………………………………………….…13

*LiMandri v. Judkins,*
  52 Cal. App. 4th 326 (Ct. App. 1997)…………………………………………………….......10

*Massachusetts Mutual Life Ins. Co. v. Superior Court,*
  97 Cal. App. 4th 1282 (Ct. App. 2002)……………………………………..…………………10

**STATUTES**

21 U.S.C. § 453(c)……………………………………………………………………….....…..3, 6

21 U.S.C. § 467(e)……………………………………………………………………………..1, 7

21 U.S.C. § 601(p)………………………………………………………………………………3, 6

21 U.S.C. § 678……………………………………………………………………………....…..1, 7

-iii-   Case No. 5:15-CV-04301-NC
REPLY ISO MTD SAC

## I. LEGAL ARGUMENT

**A. The Meat And Poultry Acts Expressly Preempt Plaintiffs' State Law Claims.**

The FSIS[1] has approved the use of the GAP insignia, step ratings and marketing call-outs for both prepackaged and unprepackaged meat products sold in the fresh meat departments of Whole Foods' California retail stores. *See* Request for Judicial Notice [Dkt. No. 33] ("Defense RJN"), Exhs. A - G. In doing so, the FSIS has explicitly found – consistent with the Acts' purposes and the FSIS's authority under them – that the use of these elements in the sale and distribution of these same Meat Products is ***not*** misleading.[2] *See* Dkt. No. 32 at 7:11-9:15. Because the Acts expressly preempt the application of state laws that would have the *effect* of imposing labeling requirements that add to, or differ from those established by the USDA, the FSIS's decision that these advertising elements are not misleading is definitive and Plaintiffs' state law claims are expressly preempted. *See* 21 U.S.C. § 678 and 21 U.S.C. § 467(e); *see also Nat'l Broiler Council v. Voss*, 44 F.3d 740, 743, 747 (9th Cir. 1994).

Plaintiffs proffer three arguments in an effort to save their claims from express preemption: (1) Whole Foods' placards, signs and napkins are not "labeling" because they do not refer to specific products and thus are not regulated by the Acts; (2) even if they are point of sale materials and thus labeling, the FSIS did not preapprove those materials; and (3) the additional statements set forth on some of the materials render them false and misleading. *See* Plaintiff's Opposition [Dkt. No. 36] ("Opp.") at 3:11-7:9. All three arguments lack merit.

### 1. Whole Foods' Signs, Placards and Napkins Bearing the GAP Insignia, Step Ratings and Call-Outs Constitute "Labeling" Under the Acts.

Plaintiffs' first contention that Whole Foods' signs, placards and napkins do not refer to particular products and thus do not constitute "labeling" under the Acts is wrong. The images reproduced in paragraph 27 of the SAC prove that Whole Foods uses the signs and placards to label specific, individual Meat Products with the GAP insignia, step ratings and marketing call-

---

[1] Whole Foods' Reply uses the same shorthand references defined in its Motion to Dismiss.
[2] Product labeling constitutes "advertising" for purposes of the UCL and FAL. *See* 58 Ops.Atty.Gen. 297 (1975); *see also Chern v. Bank of America,* 15 Cal. 3d 866, 875-876 (1976) ("advertising" is given a broad definition under Sections 17200 and 17500).

-1-     Case No. 5:15-CV-04301-NC

outs approved by the FSIS for those products. SAC, ¶27. In particular, Whole Foods receives the Meat Products from its suppliers in crates and boxes that are labeled with FSIS approved labeling that includes the GAP insignia, step rating and applicable call-out specific to the enclosed products. Whole Foods displays those same Meat Products in its refrigerated cases using the GAP insignia, step rating and marketing call-outs listed on the FSIS approved labeling. *Id.* Likewise, as shown in paragraph 27 of the SAC, the same refrigeration units often contain prepackaged meat products with the FSIS approved labels that contain the same GAP insignia, step ratings and marketing call-outs. *Id.*

Plaintiffs attempt to distinguish between the suppliers' labeling and Whole Foods' labeling thus fails because they are based on the same FSIS approval. Moreover, Plaintiffs' claim that a retail supermarket must obtain FSIS approval separate from the approval already obtained by its supplier for the sale of the same Meat Products defeats the purpose of the Acts to provide information to consumer who necessarily purchase their food from supermarkets, not directly from suppliers. *American Meat Inst. v. Leeman*, 180 Cal. App. 4th 728, 759 and fn. 5 (Ct. App. 2009) ("Common sense establishes that the goal of protecting the health and welfare of consumers is advanced by ensuring that the meat is properly labeled at all points…including during the period that it is offered for sale by a retailer").

Additionally, the larger signs and napkins displayed in Whole Foods' fresh meat departments also qualify as labeling. Similar to the potpie signage in *Meaunrit v. ConAgra Foods, Inc.*, Whole Foods places these items on or around its refrigeration units to work in tandem with the placards inside the refrigerated cases in order to highlight and explain the GAP step ratings and call-outs. *See Meaunrit v. ConAgra Foods, Inc.,* No. C09-02220 CRB, 2010 WL 2867393 at *8 (N.D. Cal. 2010). Plaintiffs have not alleged that Whole Foods used television, radio or newspaper advertisements to promote GAP's Rating Program separate from the specific Meat Products themselves. Instead, as depicted in the SAC, the signs, placards and napkins plainly relate to the specific Meat Products sold in those department of those retail stores. Thus, the placards, signs and napkins reflecting GAP's step ratings and call-outs constitute labeling even under Plaintiffs' interpretation of the Meat and Poultry Acts.

Finally, Plaintiffs' advocacy of a narrow definition of "labeling" under the Act is erroneous. Courts "broadly" interpret the term "labeling" as used in the Acts. *See American Meat Inst.*, 180 Cal. App. 4th at 757 (citing *Kordel v. United States*, 335 U.S. 345, 350 (1948)). In fact, courts have specifically interpreted the term "labeling" in FDCA, from which Congress took its definition of labeling for the Acts, to include signs, placards and posters. *Id.* at 757, fn. 27 (finding interpretations of "labeling" under the FDCA instructive); *see also New York State Restaurants Ass'n v. New York City Bd. of Health,* 509 F. Supp. 2d 351, 359 (2007) (finding that "menu, menu-boards, signs, placards, and posters would all be considered labeling of a food item" as those items "supplement[] or explain[]" the item).

As Plaintiffs acknowledge, "labeling" under the Acts includes point of sale materials that are not physically attached to a product, but bear a "textual relationship" because they "supplement or explain" the product. 21 U.S.C. §§ 453(c) & 601(p); *American Meat Inst.,* 180 Cal. App. 4th at 752-52, fn. 27, 760-62. This "textual relationship" certainly exists between the labeling approved by the FSIS and the language on Whole Foods' placards, signs and napkins. The language, in most instances, is identical. The placards, signs and napkins contain the same GAP name, GAP insignia, GAP step ratings, and GAP call-outs approved by the FSIS. The placards, signs and napkins therefore constitute "labeling" under the Acts and the FSIS approval of that labeling for Whole Foods' Meat Products expressly preempts Plaintiffs' claims.

**2.  The FSIS Has Approved the Advertising Elements Set Forth In Whole Foods' Point of Purchase Materials.**

Plaintiffs next contend that even if Whole Foods' signs constitute point of sale materials and therefore "labeling" under the Acts, there is no preemption because FSIS does not require preapproval of the point of sale materials and Whole Foods did not obtain preapproval. This argument fails for two reasons. First, Plaintiffs' contention requires an unsound cognitive leap that because the FSIS does not require preapproval of point of sale materials, the Acts' preemption clauses does not apply to those materials. This rationale conflicts with specific findings by courts that point of sale materials are subject to the Acts' preemption clauses when those materials bear a "contextual relationship" to labels approved by the FSIS. *See, e.g., American Meat Inst.*, 180 Cal.

App. 4th at 751; *see also, Meaunrit v. ConAgra Foods, Inc.,* 2010 WL 2867393 at *8.

Second, Plaintiffs' contention that "none of the advertisements at issue have been approved by FSIS" is simply wrong. *See* Opp. at 4-5. While the FSIS may not require preapproval, here, it approved the exact same language used on individual labels that is used on Whole Foods' signs, placards and napkins, finding that it is not false or misleading. Contrary to Plaintiffs' contention, Whole Foods did not merely rely on the fact that the signage, placards and napkins "include" call-outs. Rather, those materials include all of the same information that is on the labeling approved by the FSIS for the same Meat Products sold by Whole Foods. *C.f.* Defense RJN, Exhs. A-G and SAC, ¶¶26-28 (both containing GAP name, insignia, step rating, and marketing call-out).

### 3. The Additional Statements Set Forth on Some of Whole Foods' Materials Do Not Render Them False or Misleading.

The additional statements "your way of knowing how the animals were raised" reflected on only some placards and signs (but none of the napkins) and the statement "a tiered program that supports and recognizes farmer and ranchers for their emphasis on the well-being of animals" reflected on a single sign compliment the specifically approved GAP step-rating and call-outs by explaining to customers the GAP Rating Program.[3] As discussed in more detail below, these statements do not alter the meaning of the GAP step ratings and call-outs specifically approved by the FSIS. Rather, they bear a textual relationship to the product and thus, as in *Meaunrit,* are point of sale "labeling" covered under the Acts' preemption provisions. *Meaunrit,* 2010 WL 2867393 at *8.

Similarly, the two slogans cited in Paragraph 29 of the SAC: (1) "Great-Tasting Meat From Healthy Animals That Means: No Added Hormones No Antibiotics Ever"; and (2) "Raised Right Tastes Right" do not alter the FSIS approved labeling to render it misleading. As an initial matter, the signs and napkins stating "Great-Tasting Meat" specifically defines what that means, namely that Whole Foods' meat has no added hormones and no antibiotics. SAC, ¶¶28-29.

---

[3] Notably, Plaintiffs have abandoned their reliance on statements on Whole Foods' website and annual report, likely because Plaintiff Lori Grass does not claim she ever viewed those statements. Thus, any citations to Paragraphs 23, 24, 32, 34, and fn. 16 of the SAC, regarding allegedly misleading statements on Whole Foods' website and in its annual reports, are wholly irrelevant.

Plaintiffs' Opposition improperly ignores the second portion of this slogan that defines the earlier statement. Reading both phrases together, as one must, no reasonable consumer would interpret the statement "Great Tasting Meant From Healthy Animals" as meaning that Whole Foods' meat is "humanely treated;" rather, they would interpret it to mean no added hormones or antibiotics because that is the specific definition provided on the signs and napkins. *See* SAC, ¶¶28-29.

More importantly, both statements are non-actionable puffery. Puffery exists in two general forms: (1) exaggerated statements of bluster or boast; and (2) vague or subjective claims of product superiority. *See, e.g., Shaker v. Nature's Path Foods, Inc.,* No. EDCV 13-1138-GW(OPx), 2013 WL 6729802 at * 4 (C.D. Cal. 2013); *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1145 (9th Cir. 1997) (concluding that exaggerated advertising, blustering, and boasting was non-actionable puffing). In contrast to puffery, an actionable statement of fact is a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). Opinions are not actionable. *Id.* Accordingly, courts have found that the statement that pasta tastes great is non-actionable puffery. *American Italian Pasta, Co. v. New World Pasta Co.,* 371 F.3d 387, 392 (8th Cir. 2004); *see also, Fraker v. KFC Corp.*, No. 06-CV-01284-JM (WMC), 2007 WL 1296571, at *3 (S.D. Cal. 2006) ("highest quality ingredients," "balanced diet plan," and "part of a sensible diet" are puffery).

The two alleged statements "Great-Tasting Meat From Healthy Animals" [4] and "Raised Right Tastes Right" are not actionable statements of fact, because they are not quantifiable, objective statements. Whether meat tastes "great" or "right" or animals that are "raised right taste right" are clearly subjective claims of product superiority. Even if customers read GAP's Call-Outs together with the statements about meat tasting "great" or "right," those statements are not transformed from opinions to actionable facts. *See, American Italian Pasta, Co.,* 371 F.3d at 392-393 (finding factual statements about the pasta and brand did not transform the puffery statements

---

[4] The statement that Whole Foods' meat has no added hormones and no antibiotics, which defines "Great-Tasting Meat From Health Animals" is a quantifiable statement of fact. However, Plaintiffs do not allege that statement is false or misleading.

that the pasta was great tasting and a favorite into factual statements subject to verification).  Put simply, whether meat tastes great because it is Step 2, 3, 4 or 5 meat is ultimately a subjective opinion of the consumer.

Finally, Plaintiffs' reliance on *Sanderson Farms, Inc. v. Tyson Foods, Inc.* ("*Sanderson*"), 549 F. Supp. 2d 708 (D. Md. 2008), for the contention that the added statements on Whole Foods' placards and signs somehow convert the FSIS approved labeling into false or misleading statements is unsound.  *See* Opp. at 5:10-16.  *Sanderson* involved two conflicting federal statutes (i.e., the PPIA and the Lanham Act) and, therefore, did not address the question of whether federal statutes preempt state law. [5]  *Sanderson Farms,* 549 F. Supp. 2d at 709.  It also involved a statement – "Raised Without Antibiotics" – that was literally false and for which the FSIS had revoked its approval.  *Id.* at 710.  Moreover, in contrast to the national television and radio advertising at issue in *Sanderson,* this case involves in-store signs, placards and napkins placed immediately around the Meat Products.  The only language added by Whole Foods to these materials is contextual to explain the GAP Rating Program and its steps (i.e., a GAP program that allows customers to understand how the animals were raised) and, as set forth above, challenges to contextual explanations of approved "labeling" are preempted because they are point of purchase materials covered by the Acts.  21 U.S.C. §§ 453(c) & 601(p); *Meaunrit v. ConAgra Foods, Inc.,* 2010 WL 2867393 at *8.  Thus, the added statements on some but not all of the point of sale materials do not in any way alter the meaning of the preapproved GAP step ratings and call-outs.

**B.     Conflict Preemption Bars Plaintiffs' Claims.**

Even assuming, *arguendo*, that the placards, signs and napkins do not constitute point of sale materials approved under the Acts, conflict preemption would still bar Plaintiffs' claim that those materials are somehow misleading because the FSIS already found that the same language and information reflected on the placards, signs and napkins is not misleading.  For example, Plaintiffs' claims would compel the absurd result that placards directly in front of prepackaged

---

[5]  Different principles necessarily apply to an analysis of conflicting federal statutes.  *See Britt v. Grocers Supply,* 978 F.2d 1441, 1446-47 (5th Cir. 1992) ("Because the root of the preemption doctrine lies in the tension between federal and state regulation…, the analysis of the tension between two conflicting federal statutes is somewhat different.").

meats, as shown in Paragraph 27 of the SAC, constitute false or misleading advertising whereas the stickers affixed to the packaged meat inside the *same* refrigerator units, containing the same GAP insignia, step rating and marketing call-outs, are not false or misleading.  Conflict preemption is meant to prevent exactly such an inconsistent outcome.  Indeed, in *American Meat Institute*, the court specifically held that a state could not require additional information be placed on a placard in front of meat than was approved by the FSIS for the label on the meat packaging. *American Meat Inst. v. Leeman,* 180 Cal. App. 4th at 761.

      Plaintiffs attempt to confuse this issue by claiming Whole Foods has not upheld its burden to show "a clear and manifest purpose" in the Acts to preempt conflicting state law.  *See* Opp. at 8:1-7.  However, as set forth in Whole Foods' moving papers and here, numerous cases have held that the Acts' clear preemption clauses bar conflicting state law claims. [6]  *See, e.g., American Meat Inst.,* 180 Cal. App. 4th at 761.  Those preemption clauses unambiguously show that Congress meant to preempt conflicting state law.  21 U.S.C. §§ 678, 467(e).  Whether preemption operates through express or conflict preemption does not change the fact that the Acts manifest a clear purpose to preempt conflicting state law.  Here, Plaintiffs' claim that Whole Foods' labeling is misleading directly conflicts with the FSIS' finding that the same language is not misleading.  The purpose of the Acts – to provide uniformity in meat and poultry labeling – would be undermined if Whole Foods was forced to add language to its GAP signs and placards relating to Meat Products because of allegedly misleading information, while the same language on the stickers and placards of Whole Foods' prepackaged meat and poultry (which in most, if not all cases, is sold alongside or below the Meat Products), are not misleading based on their FSIS approval.  Because of the conflict between Plaintiffs' claims and the FSIS approval of the GAP step ratings and call-outs, Plaintiffs claims are preempted and its state law claims should be dismissed with prejudice.

**C.      The SAC Fails to Allege an Affirmative Misrepresentation.**

      Plaintiffs' Opposition attempts to change the nature of their allegations by asserting the

---

[6]  *In re Methyln Teritiary Butyl Ether (MTBE) Prods. Liabl. Litig.*, cited by Plaintiffs, is inapposite since the Clean Air Act does not contain an express preemption clause.  *In re Methyln Teritiary Butyl Ether (MTBE) Prods. Liabl. Litig.*, 725 F.3d 65, 97 (2d Cir. 2013).

SAC properly alleges that Whole Foods made affirmative misrepresentations in advertising GAP's Rating Program and marketing call-outs on its signs, placards and napkins. Opp. at 8:17-11:7. At its core, Plaintiffs contend Whole Foods' statements equate to affirmative misrepresentations as to the "quality" of its Meat Products. Opp. at 1:2-4, 9:4-7. Not true. Whole Foods signs, placards and napkins only speak to animal welfare and accurately convey the progressive nature of the GAP Rating Program while highlighting – through the marketing call-outs – certain criteria that make each step rating different from the others. *See* SAC, ¶¶26-28. Although these statements do convey an improvement in animal welfare standards from one step to the next, there is nothing in the referenced advertising materials that overtly promises or misrepresents the quality of the Meat Products. The "quality" of a Meat Product is subjective and will vary from consumer to consumer. The subjective belief of individual consumers, however, "do[es] not satisfy the reasonable consumer standard … used in our state's consumer laws." *Hill v. Roll Intern. Corp.*, 195 Cal. App. 4th 1295, 1305 (2011). Thus, given the statements and context of Whole Foods' advertising materials, no ordinary consumer would believe these statements affirmatively misrepresent the quality of Whole Foods' Meat Products.

      Whole Foods' signs, placards and napkins, only inform the customer as to which Meat Products qualify for which steps and what that step rating basically means so that the customer can decide for himself or herself what level of Meat Product they want to buy. *See* SAC, ¶¶26-28. The SAC does not allege any *facts* that tend to prove that any of the Meat Products sold by Whole Foods in California did not comply with the GAP step rating or marketing call-outs advertised for that specific Meat Product. The SAC also does not allege that any of the Meat Product suppliers for Whole Foods' California stores were not then or are not now in compliance with the GAP standards advertised for their Meat Products.[7] Further, the SAC does not allege that any of Whole Foods' signs, placards or napkins compare GAP's standards to industry standards or address the quality of GAP's enforcement procedures. In short, the SAC simply does not allege an affirmative

---

[7] The SAC does refer to PETA's alleged investigation of a pig farm, Sweet Stem Farm, located in Lancaster, Pennsylvania. SAC, ¶¶ 39, 52, fn. 37. However, it does not allege that any Meat Products from the Sweet Stem Farm were sold in California by these defendants.

misrepresentation as to specific Meat Products or the GAP Rating Program.

Instead, it alleges that Whole Foods's signs, placards and napkins "create[] an impression of superior animal treatment" through omissions (i.e., the failure to compare GAP's standards to industry standards and clarify GAP's audit procedures). SAC, ¶¶4-9. Indeed, the SAC alleges that Plaintiffs would not have purchased the meat products if "these advertisements disclosed the truth." SAC, ¶14. These allegations make clear that this is an omission case based on a failure to disclose information, not a case relying on express misrepresentations.[8] *See, e.g., In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014) (finding that plaintiff's claim regarding a defective product did not allege affirmative misrepresentations when advertisements touted voice and command features, but did not make any affirmative statements about quality or reliability).

### D. Whole Foods Does Not Have a Duty to Disclose GAP's Audit Process or Compare Its Standards to Industry Standards.

Plaintiffs concede that in fraud cases based on nondisclosure, there must first be a duty to disclose. *See* Opp. at 11:11-15:4. Plaintiffs argue that Whole Foods had a duty of disclosure because of: (1) the materiality of the omissions; (2) its superior knowledge of the audit process and GAP's standards; and (3) its partial representations to the contrary. Opp. at pp. 11-14. Each of Plaintiffs' contentions fail for the reasons set forth below.[9]

#### 1. Materiality Alone Does Not Establish a Duty To Disclose.

Plaintiffs' Opposition misstates the test for a duty to disclose. *See* Opp. at 11:11-18. The materiality of an omission, alone, is not enough to find a duty of disclosure. Rather, with respect

---

[8] Plaintiffs even rely on the fact that this is an omission case in arguing that the SAC satisfies the heightened pleading standards for fraud. *See* Opp. at 15:15-16:10.

[9] Plaintiffs' claim that Whole Foods has not satisfied any duty of disclosure also fails because Whole Foods has disclosed GAP's audit system and GAP's specific standards on its website. Plaintiffs' reliance on *Williams v. Gerber Products, Inc.*, to argue that the disclosure of information on its website does not satisfy Whole Foods' duty is misplaced. In *Williams*, plaintiffs made a false statement that could not be undone with a disclosure on the back of the package. Here, Whole Foods has not made an affirmative false statement. Rather, it has disclosed the disputed information on its website which is exactly where people would expect to find detailed and extensive information regarding GAP's audit process and standards.

to material facts, a duty arises when the defendant has *exclusive knowledge* of the material fact, *actively conceals* the material fact, or *makes a partial representation* that is misleading because some other material fact has not been disclosed. *Collins v. eMachines, Inc.,* 202 Cal. App. 4th 249, 255-56 (Ct. App. 2011) (modified) (citing *LiMandri v. Judkins,* 52 Cal. App. 4th 326, 336 (Ct. App. 1997)). Plaintiffs have not cited to a single case that finds otherwise. The *Stanwood* and *Massachusetts Mutual Life Ins. Co.* cases both involve the active concealment of a material fact. *Stanwood v. MaryKay, Inc.,* 941 F. Supp. 2d 1212, 1221 (C.D. Cal. 2012); *Massachusetts Mutual Life Ins. Co. v. Superior Court,* 97 Cal. App. 4th 1282, 1291 (Ct. App. 2002).[10]

### 2. Because the Omitted Facts Were Reasonably Discoverable, Whole Foods Does Not Have Exclusive Knowledge.

Despite the availability of information regarding GAP's audit process and the specifics of GAP's standards through both Whole Foods' and GAP's websites, Plaintiffs claim that the exclusive knowledge requirement is met. Opp. at 12:2-14:2. In particular, while admitting Whole Foods did not have exclusive knowledge of this information, Plaintiffs' argue that Whole Foods' financial support and representation on GAP's board prove its "superior knowledge" and trigger a duty to disclose. *Id.* at 12:2-16. Plaintiffs, however, again only articulate half of the standard for determining exclusive knowledge. The complete standard requires Plaintiffs show that Whole Foods had exclusive or superior knowledge of facts and that Plaintiffs could not have reasonably discovered those facts. *See, e.g., Wolph v. Acer America Corporation,* No. C09-01314 JSW, 2009 WL 2969467 at * 4 (N.D. Cal. 2009) (granting motion to dismiss and finding no duty to disclose because plaintiffs could have reasonably discovered the undisclosed facts); *Heron v. Best Buy Co., Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013) (granting motion to dismiss and finding plaintiffs could not successfully allege exclusive knowledge "since Plaintiff admits in the FAC that Best Buy's website disclosed the use of MM07 testing and that *Newsweek* published an article publically criticizing MM07 test for the same reasons raised by Plaintiff"). Here, Plaintiffs have

---

[10] Plaintiffs do not claim that Whole Foods has "actively concealed" a material fact, and cannot make such a claim since the disputed information is available through Whole Foods' website and on GAP's website. Both *Stanwood* and *Massachusetts Mutual Life Ins. Co.* are therefore inapposite.

not and cannot allege that Whole Foods had or has access to some knowledge that is not publically available and easily accessible when the SAC alleges the availability of detailed information at issue on both Whole Foods' and GAP's websites and in newspaper articles. *See* SAC at 7:15-22, 15:24-28.

Moreover, the litany of product defect cases on which Plaintiffs rely are in accord with *Wolph* and *Heron* on this point, but are otherwise distinguishable from the current facts. In each product case, the court found a duty to disclose based on the defendant's "superior knowledge" of the allege defect given factual allegations showing defendants had information that was *not* available to the public. *See, e.g., Falk v. Gen. Motors.,* 496 F. Supp. 2d 1088, 1096-97 (N.D. Cal. 2007) (finding exclusive knowledge despite defect complaints available on the internet because defendant had access to significant data unavailable to the public about the defect); *Johnson v. Harley-Davidson Motor Co. Grp., LLC,* 285 F.R.D. 573, 583 (E.D. Cal. 2012) (finding, in the context of analyzing class allegations and commonality, that defendant manufacturer "exclusively [had] all of the aggregate data on its products potential defects"); *In re MyFord Touch Consumer Litig.,* 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014) (reasoning that public knowledge of problems with product did not mean public knew severity of defect or that it could not be fixed). In these product defect cases, the plaintiffs could not have reasonably discovered the existence or extent of the defects. In contrast to those cases, Whole Foods has disclosed on its website the information Plaintiffs allege it had a duty to disclose, including every concern identified in the SAC with GAP's audit process. *See* SAC at 15, fn. 20. Further, Plaintiffs have not alleged any information or source of information known by Whole Foods that is unavailable to the public. The SAC, therefore, does not sufficiently allege any basis for finding a duty to disclose based on Whole Foods' exclusive knowledge of particular information.

   **3.**  **Whole Foods Did Not Make a Partial Representation.**

Plaintiffs' cursory argument that Whole Foods' duty to disclose arises from some partial representation neglects to identify an actual statement by Whole Foods regarding GAP's audit process, industry practices, or even that GAP certified meat is treated more humanely. *See* Opp. at 14:5-12. The SAC also does not allege any such partial representation. *See* SAC, ¶¶26-29.

1  Lastly, the allegation that Whole Foods' advertisements create an "impression" of superior animal
2  treatment does not amount to a partial representation.  In *Falk v. General Motors Corp.,* the court
3  found that plaintiff's allegation that, when faced with questions about defective speedometers,
4  defendant advised customers on how to diagnose their speedometers or buy a service manual
5  without disclosing that they were defective failed to amount to a partial disclosure.  *Falk v.*
6  *General Motors Corp.,* 496 F.Supp.2d at 1095.  The court found that "[s]uch advice conveys no
7  information about the GM trucks or speedometers; it therefore cannot be construed as a 'partial
8  representation' of anything to do with the trucks."  *Id.*  Similarly, Whole Foods' display of GAP's
9  Rating Program and marketing call-outs cannot be construed as a partial representation about
10 GAP's audit system or how it compares to industry standards.

11 **E.     The SAC Fails To Allege Its Fraud Based Claims With Specificity.**

12          Plaintiffs do not dispute that all of their claims are "grounded in fraud" and thus must meet
13 Rule 9(b)'s heightened pleading requirements.  Opp. at 15:6.  Plaintiffs also do not dispute that
14 broad and imprecise allegations "do not make the grade" under Rule 9(b).  Opp. at 15:6-9; *see*
15 *also, U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1057 (N.D. Cal. 1991)
16 ("'During the course of discussions in 1986 and 1987,' 'in or about May 1987 through December
17 1987,' and 'May 1987 and thereafter' … do not make the grade.").  Nevertheless, Plaintiffs
18 unconvincingly argue that the SAC's failure to identify (i) which advertisements Grass viewed and
19 relied upon, (ii) a more precise timeframe than the four year statute of limitations, or (iii) the step
20 level for each type of meat Grass purchased, suffices under Rule 9(b).

21          Although the SAC identifies signs, placards and napkins, it fails to identify which of those
22 Grass viewed and relied upon.  Indeed, Grass admits that she cannot remember the specific
23 statements made in any advertisements.  SAC, ¶ 14.  The SAC also does not state that Grass
24 viewed the placards, napkins and/or any particular sign, but simply states she recalls a "consistent
25 theme" in advertisements.  *Id.*  Whole Foods thus cannot discern which signs Grass allegedly
26 viewed that created this purported impression (e.g., did she see "Raised Right Tastes Right,"
27 and/or "Great Tasting Meat From Healthy Animals" or was it simply the GAP Call-Outs that have
28 been approved by the FSIS) or what signs were posted in the stores where Grass shopped and

1  when. Plaintiffs' allegations merely assume all the signs, placards and napkins were the same in
2  every California store.
3        Moreover, Plaintiffs' argument – set forth in a footnote[11] – that they can rely on the
4  "cumulative message of Whole Foods advertising campaign" to avoid pleading reliance with any
5  degree of specificity, lacks merit. Opp. at 17, fn. 97. The *Tobacco II* exception to pleading
6  reliance on a specific representation is "a narrow one." *See Haskins v. Symantec Corp.,* No. 13-
7  cv-01834 JST, 2013 WL 6234610, *5 (N.D. Cal. 2013). Cases that fall within the narrow
8  exception involve long-term, extensive advertising campaigns or "saturation advertising" through
9  mainstream media. *In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009). In *Haskins v. Symantec*
10 *Corp.,* the court rejected plaintiff's claim that she need not allege she saw a specific
11 misrepresentation. 2013 WL 6234610, *5. The court reasoned that allegations defendant made
12 false representations about the security of its antivirus program over a period of six years
13 throughout the United States failed to amount to the type of decades-long and saturating
14 advertising campaign encompassed by *Tobacco II*. *Id.* The same is in the present case; Plaintiffs
15 have not shown that their claims are the type of claims encompassed by *Tobacco II* and its
16 progeny. The SAC simply alleges an in-store campaign (versus television, radio and print
17 advertising), over a period of six years (versus a decades-long campaign) with a handful of
18 slogans. Because Plaintiffs cannot show their claims fall within the *Tobacco II* exception, they
19 must plead that Grass saw a specific misrepresentation, but have failed to do so.
20       Plaintiffs' separate contention that the SAC need not identify the type and step level of
21 meat Grass purchased because the advertising for all types of meat and steps are the same likewise
22 fails. The SAC takes issue with different statements made regarding specific types of meat and
23 specific steps. For instance, it claims that the Step 1 claim "No Cages No Crowding" as pertaining
24 to chicken, turkey and pork is misleading because it fails to state that those standards mimic
25 industry standards. SAC, ¶¶45-52. Yet, the SAC fails to state whether Grass relied on that call-

---

[11] Plaintiffs' Opposition contains **140** footnotes, many of which are a full paragraph long and occupy half a page. By employing this tactic, Plaintiffs thwart the statutory page limit. While in the interests of efficiency Whole Foods does not seek to strike the Opposition, the excessive use of footnotes to argue positions and explain authority is improper and should not be countenanced.

out in buying Step 1 chicken, turkey or pork, or whether she ever purchased Step 1 chicken, turkey or pork. Accordingly, the facts alleged here are different than those alleged in *Victor v. R.C. Bigelow, Inc.* where the allegation was that all products where the same and deceived plaintiff in the same manner.

### F. The SAC Fails To Adequately Allege Standing.

Plaintiffs raise the same arguments in support of Plaintiff Grass' standing that they raised to support their claim that the SAC is plead with specificity – namely, they need not plead reliance on a specific misrepresentation as their theory relies on the general impression created by Whole Foods' advertising. Opp. at 18:5-19:15. For the reasons set forth above, Plaintiffs' arguments lack merit.

Furthermore, the conclusory allegations of the SAC fail to establish PETA's standing. *Animal Legal Defense Fund v. Great Bull Run, LLC* ("*GBR*"), cited by Plaintiffs, is inapposite. In *GBR*, the complaint included specific allegations regarding plaintiff's diversion of resources, including, mobilizing petition drives, researching permitting requirements, speaking with state agencies and local officials about the event, and encouraging venues and locales where GBR events are scheduled to be held to deny requests for permits or cancel planned events. *GBR,* No. 14-cv-01171-MEJ, 2014 WL 2568685 (N.D. Cal. 2014). In contrast, the SAC makes the lone conclusory allegation that "[PETA] has suffered a diversion of its resources and a frustration of its mission." SAC, ¶12. This bare allegation makes is impossible to evaluate whether PETA actually incurred costs or diverted resources in response to the alleged conduct of these specific Whole Foods' defendants, or simply in anticipation of litigation. While PETA has alleged it conducted an investigation of a Step-2 Pig Farm in Pennsylvania (SAC ¶¶39, 52) there is nothing in those allegations that suggests the investigation was triggered by and in response to the marketing and sale of Meat Products in California by these California retail defendants.

### G. Plaintiffs' Class Allegations Should Be Dismissed.

Plaintiffs argue that to establish commonality under FRCP 23(b)(3), they need only allege that members of the public are likely to be deceived. This standard would eviscerate the

requirement of commonality, which is contrary to the statute and well-established case law.[12] Plaintiffs also contend that it is procedurally improper for Whole Foods to seek a ruling on class action certification at the pleading stage. However, it is well-established that class actions allegations can be dismissed at the pleading stage when the face of the complaint shows that plaintiffs cannot assert class claims. *See Kamm v. California City Development Co.,* 509 F.2d 205 (9th Cir. 1975). Here, it is clear from face of the SAC that common issues cannot predominate plaintiff Grass' claims. As set forth above, as currently alleged, different class members could have viewed different advertisements, relied on different representations, and purchased different products at different times from different stores. Because common issues do not predominate, it is proper for the court to dismiss the class action allegations.

**H.     Leave To Amend Should Not Be Granted.**

Plaintiffs have filed three separate versions of their complaint. Nevertheless, they have failed to allege viable claims against Whole Foods and have failed to specify how they can amend their SAC to address these deficiencies. Because Plaintiffs were aware of these deficiencies prior to filing their last amendment, the SAC should be considered their "best and last shot" and an indication that any further leave to amend would be futile.

## II.     CONCLUSION

For all of the foregoing reasons, Whole Foods respectfully requests that the Court dismiss the SAC without leave to amend.

Dated:  December 23, 2015                    BLAXTER | BLACKMAN LLP

                                             By     */s/ Brian R. Blackman*
                                                    J.T. WELLS BLAXTER
                                                    BRIAN R. BLACKMAN
                                                    Attorneys for Defendants

---

[12] Plaintiffs misconstrue *Perkins v. LinkedIn Corp.* That case analyzed whether common questions could predominate when issues about entitlement to restitution and amount of restitution varied within a class, and found that different damages calculations could not defeat class action certification. *Perkins v. LinkedIn Corp.,* 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014). The court did not consider whether common issues predominate in cases such as this.