UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS and LORI GRASS,<br><br>Plaintiffs,<br><br>v.<br><br>WHOLE FOODS MARKET CALIFORNIA, INC., et al.,<br><br>Defendants. | Case No. 15-cv-04301 NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 32 |

In this consumer class action, Whole Foods moves to dismiss Plaintiffs' second amended complaint in its entirety without leave to amend. Whole Foods claims that Plaintiffs lack standing, that the second amended complaint fails to allege fraud-based state law claims with the specificity required by Federal Rule of Civil Procedure 9, that Plaintiffs' claims are all preempted by federal law, and that Plaintiffs' class action allegations fail because they fail to allege commonality. The Court finds that Plaintiffs have standing and have adequately alleged class action allegations. However, the Court finds that Plaintiffs have failed to allege their fraud-based claims with the required specificity, and that the Court cannot determine whether the state claims are preempted without more specific allegations. Therefore, the Court GRANTS Whole Foods' motion to dismiss as to the Rule 9 specificity and preemption and DENIES the motion as to Plaintiffs' standing and class certification.

Case No. 15-cv-04301 NC

## I. BACKGROUND

People for the Ethical Treatment of Animals, Inc. (PETA) is an international animal protection organization. Dkt. No. 20 at 5. PETA is organized as a nonprofit corporation and charity pursuant to section 501(c)(3) of the Internal Revenue Code with headquarters in Norfolk, Virginia and offices in Los Angeles, California. *Id*. PETA's "mission focuses on improving and educating the public about animal use in four main areas, including animals raised for food." Dkt. No. 20 at 5. PETA states in the second amended complaint that "[i]t brings this case on its own behalf for injunctive relief to protect its organizational interests and resources." Dkt. No. 20 at 6.

Lori Grass is a Whole Foods customer suing on behalf of herself and all others similarly situated. Dkt. No. 20 at 3. She is a citizen of the state of California residing in Portola Valley. *Id*. at 6. Grass has "purchased Meat Products from Defendants' retail store located in Mountain View and Redwood City, California, regularly over the last four years preceding the filing of the complaint." *Id*.

In their second amended complaint, Plaintiffs claim that Whole Foods has touted "superior animal welfare" to sell meat products at a marked up price. *Id*. at 13. They claim that Whole Foods has violated California law, specifically the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1750, and the False Advertising Law (FAL), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

The allegations state that Whole Foods' in-store advertisements on placards, signs, and napkins mislead customers into believing that the animals raised for meat are treated in a humane manner exceeding industry standards, specifically as shown in numerical "call-outs" on a five step Global Animal Partnership rating of 1-5+. *Id*. at 17. However, Plaintiffs assert that the step rating does not reflect a higher quality of treatment for the animals and that the review process is insufficient, rendering the call-outs useless and misleading. *Id*. at 18. Currently before the Court is Whole Foods' motion to dismiss the second amended complaint. All parties have consented to the jurisdiction of a magistrate

Case No. 15-cv-04301 NC                  2

judge in accordance with 18 U.S.C. § 636(c).  Dkt. Nos. 7, 18.

## II. JUDICIAL NOTICE

Both parties have submitted motions for judicial notice with documents they wish the Court to consider.  *See* Dkt. Nos. 33, 37.  Neither party has objected to the other's motion for judicial notice and judicial notice is granted to both parties' documents.  The Court has reviewed the documents in considering the present motion.

## III. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

Whole Foods argues that Plaintiffs' second amended complaint should be dismissed in its entirety with prejudice because: (1) both PETA and Grass lack standing to bring this suit; (2) the second amended complaint fails to allege fraud-based claims with required specificity; (3) all of Plaintiffs' claims are preempted by federal law; and (4) Plaintiffs' class action claims fail due to lack of commonality.

Case No. 15-cv-04301 NC                           3

### A. Standing

Whole Foods claims that both PETA and Grass lack standing. Whole Foods argues that "Plaintiff Grass admits that she does not recall what advertising she reviewed and therefore cannot allege the element of reliance required for each of her claims." Dkt. No. 32 at 9. Whole Foods also states that PETA "has not alleged any facts demonstrating a diversion of time or resources that might demonstrate its standing." *Id*.

Plaintiffs argue that both Grass and PETA have alleged sufficient facts to show their standing. Dkt. No. 36. Specifically, the second amended complaint includes Grass' allegations that she saw in-store advertisements at the Whole Foods in Mountain View and Redwood City, California, and purchased meat products "that she would not have purchased had she known that Whole Foods does not ensure compliance with its animal welfare standards or that key standards do not ensure meaningful improvement over common industry practice." *Id*. at 27. PETA states that it has standing because it has alleged a "diversion" of its organizational resources and a frustration of its mission of a well-informed public due to Whole Foods' actions. *Id*. at 28.

#### 1. Grass' Standing

Federal courts evaluate motions to dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1), which authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). To establish standing within the meaning of Article III, a plaintiff must show "injury in fact," causation, and redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992); *Sprint Communications Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 274 (2008).

To have standing under the FAL, CLRA and UCL, Grass must claim to have relied on the alleged misrepresentation and suffered economic injury as a result of the challenged practice or advertising. *See* Cal. Bus. & Prof. Code §§ 17535, 17204. The California Supreme Court in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011), stated, "a consumer who relies on a product label and challenges a misrepresentation contained

therein can satisfy the standing requirement of § 17204 by alleging that . . . he or she would not have bought the product but for the misrepresentation." *See also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) ("[p]leading that one would not have otherwise purchased the product but for the misleading advertising [] satisfies the consumer's obligation to plead a causal link between the advertising and the alleged economic injury").

Here, Grass alleges that she "saw the advertising signs, placards, and/or napkins described [in the Complaint] in the retail store where she purchased the Meat Products" regularly over four years. Dkt. No. 20 at 6. Grass admits that she "does not recall the specifics of the many advertisements she saw before she purchased the Meat Products, [but] she does recall that superior animal welfare was a consistent theme across the advertisements she saw." *Id*. at 6-7. The second amended complaint asserts, "[t]hese representations about superior animal welfare influenced her decision to purchase Meat Products. Plaintiff would not have purchased them or paid as much had these advertisements disclosed the truth." *Id*. at 7.

Grass' statements of reliance are sufficient for standing for her FAL, CLRA, and UCL claims. Further, her assertion that she would not have paid Whole Foods' prices for the meat but for her belief on the statements about animal welfare satisfies the "injury in fact" requirement for Article III standing. Grass therefore has standing.

### 2. PETA's Standing

Unlike Grass, PETA is not a customer of Whole Foods. Instead, PETA alleges that as an organizational plaintiff, it has standing because it has diverted resources as a result of Whole Foods' alleged unlawful business practices, which have thwarted PETA's mission. The Ninth Circuit in *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d 1083 (9th Cir. 2010) requires an organization like PETA to show that it has suffered both a "diversion of its resources" and "a frustration of its mission" in order to have standing. *See also Animal Legal Def. Fund v. Great Bull Run, LLC*, 14-cv-01171 MEJ, 2014 WL 2568685, at *6 (N.D. Cal. June 6, 2011).

Case No. 15-cv-04301 NC                    5

Here, PETA alleges that its mission "focuses on improving and educating the public about animal use in four main areas, including animals raised for food." Dkt. No. 20 at ¶ 11. In language tracking the Ninth Circuit's requirements in *Asociacion de Trabajadores*, PETA argues that it "has suffered a frustration of its mission of a well-informed public and has had to divert resources from other PETA projects in order to urge Whole Foods to stop its misleading advertising and to educate the public about the inadequacy of [Whole Foods]' standards." Dkt. No. 36 at 28. At this stage in the pleadings, the Court takes as true the allegations in the complaint. *Cahill*, 80 F.3d at 337. Therefore, under *Asociacion de Trabajadores*, PETA has sufficiently alleged organizational standing.

### B. Fraud-Based State Law Claims

To state a claim for false or misleading advertising under the UCL or FAL, Plaintiffs must allege facts showing that Whole Foods' advertising is "likely to deceive a reasonable customer." *Williams v. Gerber Products, Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Plaintiffs' claim under the CLRA must allege facts showing that Whole Foods advertised its Meat Products as having characteristics, benefits, uses, qualities, sponsorships, approvals or certifications that they do not have. Cal. Civ. Code § 1770(a)(2),(5),(7). And because their UCL, FAL, and CLRA claims contain an element of fraud, Plaintiffs must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103-06 (9th Cir. 2003).

#### 1. Pleading Reliance With Specificity Under Rule 9(b)

According to Rule 9(b), "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s standards, Plaintiffs must allege circumstances "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations omitted). "Plaintiffs' complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726

Case No. 15-cv-04301 NC    6

F.3d 1124, 1133 (9th Cir. 2013) (internal quotations omitted).

Here, Whole Foods argues that that second amended complaint fails to satisfy the requirements of Rule 9(b) because it does not "identify the specific advertisements upon which plaintiff Grass allegedly relied." Dkt. No. 32 at 26. Because Grass "admits that she cannot remember what the advertisements stated, but simply remembers a 'superior animal welfare . . . theme'" the second amended complaint fails to "identify any particular fraudulent statement, or actual source, that plaintiff Grass relied upon in purchasing meat products from Whole Foods." *Id*.

Further, Whole Foods argues that the second amended complaint fails to "state with particularity when Grass viewed any specific advertisements." *Id*. Although it "generally states" that Grass purchased unprepackaged meats during the four year period, it "does not disclose when she viewed any purportedly misleading advertisements." *Id*. at 27. Finally, Whole Foods claims that "it is not evident from the [second amended complaint] exactly which Meat Products are implicated by Plaintiffs' claims." *Id*. According to Whole Foods, because Grass' allegations are "completely devoid of any allegation as to what step(s) of meat (1, 2, 3, 4, and/or 5+) plaintiff Grass purchased for each species of Meat Product" Whole Foods cannot determine whether Grass alleges that she purchased every rating of meat or only certain levels of meat "on reliance on particular advertisements." *Id*.

Plaintiffs argue that their allegations are sufficient under Rule 9(b) because the second amended complaint identifies the "who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso v. Gen Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal citations omitted). "As required by *Cafasso*, Plaintiffs satisfy the who (Whole Foods), the what (misrepresentations regarding superior animal treatment and omission that standards are not enforced or a meaningful improvement), the when (since four years prior to the complaint being filed and throughout the class period), the where (in-store signs, placards, and napkins), and the how (misrepresentations and omissions resulting in premium payments that would not have

Case No. 15-cv-04301 NC 7

otherwise been made)." Dkt. No. 36 at 23 (internal citations to the second amended complaint omitted).

However, the Ninth Circuit in *Cafasso* specifically stated that general allegations do not suffice to pass Rule 9(b) scrutiny. The plaintiff's allegation was rejected under Rule 9(b) because "[t]his type of allegation, which identifies a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement, is precisely what Rule 9(b) aims to preclude." *Cafasso*, 637 F.3d at 1057. Likewise, here Plaintiffs' second amended complaint does not satisfy Rule 9(b) because it does not specifically identify what misleading advertisements Grass relied on.

For example, Plaintiffs attach multiple exemplar photographs to the complaint, but it is not clear in the photographs which placards and signs they allege are illegal, are not preempted, and were relied on by Grass. *See* Dkt. No. 20. At page ten of the second amended complaint, the Plaintiffs have included photographs of Whole Foods' display cases of unprepackaged meats ranging from chicken breasts to steaks. *Id*. at 12. There are small white placards inside the glass display case giving information about each of the meats. *Id*. There is also a chart along the bottom of the display case stating, "5-Step Animal Welfare Rating, Your Way Of Knowing How The Animals Were Raised," accompanied by a series of different colored boxes with each Step and a brief description. *Id*. At the top of the glass display is another bar with the words "Country Natural" and "Pasture Centered," although the rest of the writing is cut off from the photograph. *Id*.

From this photograph and the allegations in the second amended complaint, it is not clear whether the Plaintiffs object to the white placards within the glass, the statements on the top bar, the bottom bar, or all three. It is also not clear what statements Grass alleges she relied upon when she decided to purchase unprepackaged meat products at Whole Foods. Therefore, the second amended complaint does not provide enough information to satisfy Rule 9(b)'s requirement to allege specific misrepresentations.

### 2. Pleading A *Tobacco II* Advertising Campaign

In *In re Tobacco II Cases*, 46 Cal. 4th 298, 327, 328 (2009), the California Supreme

Case No. 15-cv-04301 NC　　　　8

Court held that while a plaintiff alleging a UCL claim "must plead and prove actual reliance," the plaintiff "is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign." Under *Tobacco II*, a plaintiff may plead "an extensive and long-term advertising campaign," rather than pleading reliance on specific misrepresentations. *Id*. Here, Plaintiffs argue that they have sufficiently alleged a *Tobacco II*-type extensive and long-term advertising campaign, allowing them to "rely on the cumulative message of Whole Foods's advertising campaign." Dkt. No. 36 at 25 n.97.

A district court in *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015), applied *Tobacco II* to find that consumers had adequately alleged defendant Apple's long-term advertising campaign for class action to pass Rule 9(b) scrutiny without alleging specific misrepresentations. The court stated that "once a plaintiff sufficiently alleges exposure to a long-term advertising campaign as set forth in *Tobacco II,* she d[oes] not need to plead specific reliance on an individual representation." *Id*. at 977. The court examined the duration and frequency of Apple's advertising and found "that the fifteen or twenty more-specific statements about sandboxing, protection of personal information, and consumer privacy Plaintiffs have identified, combined with the larger and more general campaign expressing Apple's concern with privacy and security, are sufficiently related to the alleged failing of the iDevices to satisfy *Tobacco II's* pleading requirements." *Id*. at 982-83.

Likewise, the court in *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1258, 99 Cal. Rptr. 3d 768, 787 (2009), found allegations sufficient under *Tobacco II* because, "although the advertising campaign alleged in this case was not as long-term a campaign as the tobacco companies' campaign discussed in *Tobacco II,* it is alleged to have taken place over many months, in several different media, in which [defendant] consistently promoted its GMS/GPRS network as reliable, improving, and expanding."

Here, Plaintiffs argue that Whole Foods' "advertisements create an overall message

1    of ensuring superior animal treatment—the consumer takeaway is not in the details of the
2    'call-outs.'" Dkt. No. 36 at 26. Whole Foods argues that *Tobacco II* is inapposite because
3    there the tobacco companies were saturating the market with radio ads, posters, and other
4    forms of advertisement. Conversely here, the second amended complaint alleges that
5    Whole Foods has "inundated" Grass and other customers with signs, placards, and napkins
6    over a four year period. However, it is not clear from the second amended complaint
7    which signs and placards were deceptive advertising, over what time period they were
8    placed in the store and Grass was exposed to them, and therefore whether the alleged
9    advertising campaign rises to the level required under *Tobacco II*. As such, the second
10   amended complaint fails to qualify for an exemption from Rule 9(b)'s requirement to plead
11   specific misrepresentations.

### C.    Federal Preemption

The next issue is whether Plaintiffs' state law claims are preempted by the Federal Poultry and Poultry Products Act, 21 U.S.C. § 451, *et seq.* and the Federal Meat Inspection Act, 21 U.S.C. § 601, *et seq*. Whole Foods claims that all of Plaintiffs' claims are preempted because the statements in the signs, placards, and napkins come from labels that have been reviewed by the USDA's Food Safety and Inspection Service (FSIS). Dkt. No. 32 at 8.

Whole Foods alleges two types of federal preemption of Plaintiffs' state law claims. First, Whole Foods argues that the federal laws "expressly" preempt state law claims based on labeling approved by FSIS. Dkt. No. 32 at 8. Alternatively, Whole Foods argues "conflict" preemption; the theory that the federal laws "also impliedly preempt state law claims based on advertising that contains the same information as labels approved under the Acts for those same products because such enforcement necessarily conflicts with the authority granted to the USDA to determine whether or not the statements are false or misleading." *Id*.

#### 1.    Express Preemption

First, Whole Foods states that the Meat and Poultry Acts include express

Case No. 15-cv-04301 NC            10

preemption provisions that bar any state-law requirements that are not identical to the federal requirements. 21 U.S.C. § 678; 21 U.S.C. § 467(e). However, this express preemption must be clear. To determine the scope of an express preemption provision, "we apply the assumption that the historic police powers of the States were not to be superseded . . . unless that was the clear and manifest purpose of Congress." *Am. Meat Inst. v. Leeman*, 180 Cal. App. 4th 728, 748, 102 Cal. Rptr. 3d 759, 774 (2009) (internal citations and quotations omitted).

Whole Foods argues that FSIS approved labels are attached to the meat by the suppliers, and the Whole Foods signs around the meat area are duplicative of the labels "approved by FSIS for those products." Dkt. No. 39 at 6. "Whole Foods receives the Meat Products from its suppliers in crates and boxes that are labeled with FSIS approved labeling that includes the GAP insignia, step rating and applicable call-out specific to the enclosed products. Whole Foods displays those same Meat Products in its refrigerated cases using the GAP insignia, step rating and marketing call-outs listed on the FSIS approved labeling." Dkt. No. 39 at 6.

In *Meaunrit v. ConAgra Foods Inc.*, No. 09-cv-02220 CRB, 2010 WL 2867393, at *7 (N.D. Cal. July 20, 2010), the court dismissed the plaintiffs' state law claims that the defendant's labels were false and misleading because defendant's chicken pot pies received pre-approval by the USDA and FSIS. Whole Foods argues that under *ConAgra*, Plaintiffs' claims are challenging labeling that the FSIS has approved. "The FSIS pre-approved the labeling of various Whole Foods meat suppliers whose labels include the GAP insignia, and the applicable step rating and marketing call-out for that meat product, i.e. GAP's Steps 1, 2, 3,4, 5, and 5+ for chicken, turkey, pork and beef." Dkt. No. 32 at 18.

Whole Foods also cites to *American Meat Inst*. 180 Cal. App. 4th at 781-784, where a California state court found that Prop 65 warnings were labeling. "As we have explained, in *Kordel*, the [California] Supreme Court stated that material 'accompanies' a product, and thus constitutes 'labeling' if there is a 'textual relationship' between the material and

Case No. 15-cv-04301 NC                                   11

the product.  One article or thing is *accompanied* by another when it supplements or explains it, in the manner that a committee report of the Congress accompanies a bill.  No physical attachment one to the other is necessary.  Material constitutes labeling if it was designed for use in the distribution and sale of the product." *American Meat Inst*. 180 Cal. App. 4th at 784 (internal citations and quotations omitted).

Plaintiffs claim that Whole Foods' signs, placards, and napkins do not refer to specific products and are therefore advertisements, not labels. Dkt. No. 36 at 10.  Plaintiffs distinguish *ConAgra* on the grounds that there, "the in-store materials promoted the specific chicken pot pies made by the defendant manufacturer" while "here the in-store signs, placards, and napkins do not refer to specific meat products, much less a specific meat product from a certain supplier – instead, they refer to all of them.  Thus they are not labels under the Meat and Poultry Acts" and there is no preemption.  Dkt. No. 36 at 12. Plaintiffs argue that the Whole Foods materials give misleading explanatory statements to assure customers that they "know" how the animals are treated.  Dkt. No. 20 at 17.

This question turns on whether or not the Whole Foods signage, placards, and napkins are simply reproductions of the suppliers' labels.  If they are, and the statements are FSIS approved labels, then they are expressly preempted.   However, if the signage, placards, and napkins are not the same and are instead Whole Foods advertising, then there is not express preemption.  However, the second amended complaint does not provide sufficient information to know whether the signage, placards, and napkins are labels or advertisement.  The attached photos do not clearly distinguish what signs and placards are federally reviewed labels, and which are independent signs made by Whole Foods promoting their fresh meats in general.  Therefore, the second amended complaint does not provide enough specificity to determine whether Plaintiffs' claims are preempted.

### 2. Conflict Preemption

Whole Foods also argues that if there is no express preemption, "conflict preemption would still bar Plaintiffs' claims." Dkt. No. 32 at 19.  This is because "the labels approved by FSIS use the same language, statements and information that are

1  displayed in the Whole Foods' placards, signage and napkins at the foundation of
2  Plaintiffs' claims." *Id.* Therefore, "[a]llowing a jury or court to decide whether these
3  preapproved statements are misleading would conflict with the federal regulatory scheme."
4  *Id.* However, the same questions of whether Whole Foods' signage, placards, and napkins
5  are duplicative of federally-approved labels apply to conflict preemption.

### D.  Class Certification

Rule 23(c)(1)(A) addresses the timing of a district court's class certification determination, and states: "*Time to Issue*: At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).  "Courts that have stricken class allegations at the pleading stage have recognized that the granting of motions to strike class allegations before discovery and in advance of a motion for class certification is rare and have only done so in rare occasions where the class definition is obviously defective in some way." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014).

In its motion to dismiss, Whole Foods claims that Plaintiffs have failed to plead a class action complaint under the Federal Rule of Civil Procedure 23(c)(1). Dkt. No. 32 at 31. More specifically, Whole Foods claims that the second amended complaint fails to allege predominating common issues as required for class certification. Dkt. No. 32 at 32. "Each of GAP's steps is associated with a different marketing call-out that corresponds to different standards and different types of meat. Thus, independent circumstances will determine which GAP Call-Out each class member viewed, how each customer interpreted that call-out, the type of Meat Product each member purchased in reliance on that call-out and which of GAP's standards applies to each individuals [sic] claim." *Id.*

However, the test at a motion to dismiss is whether the class action allegations are plausible. At paragraph 73 of the second amended complaint, Plaintiffs list multiple common questions of law and fact for their proposed class. *See* Dkt. No. 20 at 28-29. Plaintiffs' class allegations are plausible at this stage, and Plaintiffs have stated that they "propose to move for class certification by January 11, 2017." Dkt. No. 38 at 8.

Therefore, the Court denies Whole Foods' motion to dismiss the class action allegations at this stage in the pleadings.

## V.   CONCLUSION

Because the second amended complaint does not contain enough information to allege fraud with the specificity required by Rule 9(b) or the *Tobacco II* line of cases, Whole Foods' motion to dismiss is GRANTED with leave to amend. If Plaintiffs wish to file an amended complaint, they must do so by February 16, 2016. Fed. R. Civ. P. 12(a)(4)(A). The Court cannot rule on whether Plaintiffs' claims are preempted by federal law without more specific allegations. Whole Foods' motion to dismiss all class action allegations is DENIED.

**IT IS SO ORDERED.**

Dated: January 29, 2016

_____
NATHANAEL M. COUSINS
United States Magistrate Judge